# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| ADMINTERMARE, A DIVISION OF ADM INTERNATIONAL, SARL,<br><br>Plaintiff,<br><br>vs.<br><br>KAMCA TRADING SA; and GLENCORE LTD.,<br><br>Defendants. | **C.A. NO. 4:19-cv- 02238**<br><br>**Admiralty 9(h)** |

## GLENCORE LTD.'S MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

STATEMENT OF ISSUES, STANDARD OF REVIEW,
AND SUMMARY OF ARGUMENT ................................................................................ 1

   **I.  Lack of Personal Jurisdiction (Rule 12(b)(2))** ...................................................... 1

   **II. Failure to State a Claim (Rule 12(b)(6))** .............................................................. 2

FACTUAL BACKGROUND ............................................................................................. 4

ARGUMENT ....................................................................................................................... 6

   **I.  All Claims Against Glencore Should
Be Dismissed for Lack of Personal Jurisdiction** ................................................ 6

      A.  Glencore Is Not Subject to General Jurisdiction in Texas ................................ 7

      B.  There Is No Specific Jurisdiction Over Glencore in Texas .............................. 9

   **II. The Causes of Action Against Glencore
Should Be Dismissed for Failure to State a Claim** ........................................... 10

      A.  The Second Cause of Action (Breach of Warranty and
Misrepresentation) Fails to State a Claim Against Glencore .......................... 10

      B.  The Third Cause of Action (Negligence) and Fourth Cause
of Action (Product Liability) Are Barred by the Economic Loss Rule ........... 12

      C.  The Fifth Cause of Action (Indemnity and Contribution)
Should Be Dismissed Because Plaintiff's Potential
Liability to Nordic Bulk Is Based in Contract, Not Tort ................................ 13

      D.  The Sixth Cause of Action (Equitable Subrogation) Should Be Dismissed
Because Plaintiff Has Not Fully Discharged Any Debt of Glencore .............. 14

   CONCLUSION ............................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Page No(s)**

**Cases**

*800 Adept, Inc. v. Enter. Rent-A-Car, Co.*,
   545 F. Supp. 2d 562 (E.D. Tex. 2008)..................................................................... 8

*Alam v. Fannie Mae*,
   No. H-02-4478, 2005 WL 8168877  *10 (S.D. Tex. Sept. 29, 2005) ................................... 2, 3

*Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*,
   335 F.3d 429 (5th Cir. 2003) .............................................................................. 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................... 2

*Berge Helene Ltd. v. GE Oil & Gas, Inc.*,
   896 F. Supp. 2d 582 (S.D. Tex. 2012)................................................................... 11

*Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*,
   826 F.2d 424 (5th Cir. 1987) ......................................................................... 11, 12

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .................................................................................... 7, 8

*Dishong v. Peabody Corp.*,
   219 F.R.D. 382 (E.D. Va. 2003)......................................................................... 14

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
   476 U.S. 858 (1986) .................................................................................. 11, 13

*E.A.S.T., Inc. of Stamford, Conn. V. M/V Alaia*,
   673 F. Supp. 796 (E.D. La. 1987)....................................................................... 14

*Elbar Invs., Inc. v. Okedokun*,
   593 B.R. 469 (Bankr. S.D. Tex. 2018) ................................................................. 15

*Fed. Commerce & Nav. Co. v. M/V Marathonian*,
   528 F.2d 907 (2d Cir. 1975) ........................................................................... 13

*Fermar, S.P.A. v. Peninsular Ship Agencies, Inc.*,
   1993 A.M.C. 1803 (E.D. La. 1992)..................................................................... 12

*Great Am. Assurance Co. v. Wills*,
   No. SA-10-CV-353-XR, 2012 WL 13029762 (W.D. Tex. July 24, 2012) ............................ 16

*Hamada v. Far E. Nat'l Bank (In re Hamada)*,
   291 F.3d 645 (9th Cir. 2002) ............................................................................... 16

*Hardy v. Gulf Oil Corp.*,
   949 F.2d 826 (5th Cir. 1992) ............................................................................... 14

*Head v. Las Vegas Sands, LLC*,
   298 F. Supp. 3d 963 (S.D. Tex. 2018),
   *aff'd*, 760 F. App'x 281 (5th Cir. 2019) ............................................................. 8, 9

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) ................................................................................. 2

*Lonestar Livestock Equip. Co. v. S. Livestock Sys., LLC*,
   No. CIV.A. H:15-447, 2015 WL 3756501 (S.D. Tex. June 16, 2015) ............................ 1, 2, 7

*Louisiana ex rel. Guste v. M/V Testbank*,
   752 F.2d 1019 (5th Cir. 1985) ........................................................................ 12, 13

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) .................................................................... 1, 6, 7, 9

*Nova Info. Sys., Inc. v. Greenwich Ins. Co.*,
   365 F.3d 996 (11th Cir. 2004) ............................................................................. 16

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
   253 F.3d 865 (5th Cir. 2001) ................................................................................. 9

*Pape Equip. Co. v. I.C.S., Inc.*,
   737 S.W.2d 397 (Tex. App. 1987) ......................................................................... 15

*Park v. Escalera Ranch Owners' Ass'n, Inc.*,
   457 S.W.3d 571 (Tex. App. 2015) ......................................................................... 11

*Pemeno Shipping Co. v. Louis Dreyfus Corp.*,
   No. H-04-2996, 2006 WL 696555 (S.D. Tex. Mar. 14, 2006) .................................... 13

*Providence v. Sims*,
   441 S.W.2d 516 (Tex. 1969) ................................................................................. 15

*Robins Dry Dock & Repair Co. v. Flint*,
   275 U.S. 303 (1927) ................................................................................... 3, 12, 13

*State of Veracruz v. BP, P.L.C. (In re Deepwater Horizon)*,
   784 F.3d 1019 (5th Cir. 2015) ............................................................................. 12

*Stewart v. Marathon Petroleum Co. LP*,
   326 F. Supp. 3d 284 (E.D. La. 2018) ................................................................... 9, 10

*Taira Lynn Marine Ltd. No. 5, LLC v. Jays Seafood, Inc.*
*(In re Taira Lynn Marine Ltd. No. 5, LLC)*,
   444 F.3d 371 (5th Cir. 2006) ............................................................................... 12

*TransMontaigne Partners L.P. v. Theta Marine Co.*,
   No. B-10-CV-19, 2011 WL 13337542 (S.D. Tex. Mar. 1, 2011) ...................... 14, 15

*Wartsila N. Am., Inc. v. Int'l Ctr. for Dispute Resolution*,
   387 F. Supp. 3d 715 (S.D. Tex. 2018) .................................................................. 8

**Rules**

Fed. R. Civ. P. 12(b)(2) ..................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 2, 10, 16

Pursuant to Fed. R. Civ. P. 12(b)(2) and (6), Glencore Ltd. ("Glencore") respectfully submits this motion to dismiss all claims asserted against Glencore that are contained in the First Amended Complaint (ECF No. 10) (the "FAC") of ADMIntermare ("Plaintiff").

## NATURE AND STAGE OF THE PROCEEDINGS

This case is premised on Plaintiff's purchase of fuel oil from Kamca Trading, SA ("Kamca"), which allegedly failed to meet the specifications of the contract between Plaintiff and Kamca, and allegedly caused damage to a vessel (the "Vessel") under time charter by Plaintiff.  Plaintiff seeks to recover from Kamca and Glencore for the amounts that it may be required to pay to the Vessel's disponent owner for Plaintiff's breach of its charterparty in procuring and using the fuel oil.  Glencore is alleged to have supplied the fuel oil to Kamca, but is not alleged to have had any awareness of or involvement with Plaintiff, Plaintiff's contract with Kamca, or the Vessel's fuel requirements.  Nor is there any claim that the fuel oil as sold by Glencore did not meet the specifications of its sale contract with Kamca.

The case is at the pleading stage.  All claims against Glencore are subject to dismissal pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure.

## STATEMENT OF ISSUES, STANDARD OF REVIEW, AND SUMMARY OF ARGUMENT

### I.     Lack of Personal Jurisdiction (Rule 12(b)(2))

As a threshold matter, there is no personal jurisdiction over Glencore.  "The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014).  When ruling on personal jurisdiction at the pleading stage, "the court may consider the entire contents of the record, including affidavits." *Lonestar Livestock Equip. Co. v. S. Livestock Sys., LLC*, No. CIV.A.

H:15-447, 2015 WL 3756501, at *2 (S.D. Tex. June 16, 2015) (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).  The allegations of the complaint must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff.  *Id.* However, "the court is not required to credit conclusory allegations, or allegations controverted by opposing affidavits."  *Id.* at *4.  Pursuant to Rule 12(b)(2), "[a] court must dismiss an action when it lacks personal jurisdiction over the defendant."  *Id.* at *2.

Glencore is a company organized and existing under the laws of Switzerland, with its principal place of business located in Baar, Switzerland.  It is therefore not "at home" in Texas or subject to general jurisdiction in this forum.  Glencore is also not alleged to have performed any act related to Plaintiff's claims in Texas, as required for specific jurisdiction.  Indeed, there is no alleged connection between this lawsuit and Texas at all.  Accordingly, there is no personal jurisdiction, and Glencore should be dismissed from the case.

## II.    Failure to State a Claim (Rule 12(b)(6))

The FAC also fails to state any viable claim against Glencore, and it should be dismissed pursuant to Rule 12(b)(6).  "Rule 12(b)(6) provides that a party may move to dismiss an action for 'failure to state a claim upon which relief may be granted.'"  *Alam v. Fannie Mae*, No. H-02-4478, 2005 WL 8168877, at *10 (S.D. Tex. Sept. 29, 2005) (quoting Fed. R. Civ. P. 12(b)(6)).  "When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in its favor."  *Id.* (citation omitted).  However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Dismissal can be

based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Alam*, 2005 WL 8168877, at \*10 (citation omitted).

All of the causes of action asserted against Glencore should be dismissed.

*First*, the cause of action for "breach of warranty and misrepresentation" should be dismissed because Glencore did not have any contract with Plaintiff, and did not make any representations to it.  Without a warranty or a representation, there is obviously no claim for a *breach* of warranty or a *mis*representation.  These claims should therefore be dismissed.

*Second*, the negligence and product liability claims are barred by the economic loss rule, because Plaintiff's claims are for economic losses only—*i.e.*, the amounts that it may be required to pay for breach of its charterparty.  There is no applicable exception to that rule.  Pursuant to the Supreme Court's *Robins Dry Dock* decision and binding Fifth Circuit precedent, Plaintiff as a time charterer did not have a proprietary interest in the Vessel and therefore cannot assert tort claims based on the alleged physical damage to the Vessel.

*Third*, the causes of action for indemnity and contribution are not viable because those tort law concepts have no application where, as here, Plaintiff's underlying liability is for breach of a contract.  Indemnity and contribution are therefore not available for whatever amounts Plaintiff is required to pay for a breach of its charterparty.

*Fourth*, the newly added cause of action seeking equitable subrogation of the Vessel owners' claims against Glencore should be dismissed because the FAC does not plead the essential element that Plaintiff has paid a debt of Glencore owed to the Vessel owners, in its entirety.  Plaintiff admits that it has not paid anything to the Vessel owners, and any potential

future payment by Plaintiff would only discharge its own contractual liability under its charterparty.  Subrogation is therefore not available as a matter of law.

There are no other purported claims asserted against Glencore.  The Court should therefore grant the motion and dismiss Glencore from the case.

## FACTUAL BACKGROUND

Plaintiff was a time charterer of the *M/V SFL Yukon* (*i.e.*, the Vessel).  (FAC ¶¶ 3, 11). The FAC alleges that in June 2018, Plaintiff entered into a contract with Kamca, in which Kamca agreed to supply the Vessel with 980 metric tons of RMG 380 bunker fuel, and 90 metric tons of MGO bunker fuel, in Panama.  (*Id.* ¶¶ 6, 8).  The FAC pleads that the fuel "delivered by Kamca to the Vessel was contaminated, unsuitable, substandard, defective, unfit, non-conforming, and off-specification."  (*Id.* ¶ 8).  As a result, the Vessel allegedly experienced damage to its engines and related damage after consuming the fuel.  (*Id.* ¶ 11).

The Vessel was subject to three separate charterparties.  (*Id.*).  The head owners of the Vessel have initiated arbitration against Hyundai Co. Limited ("Hyundai") for the alleged damage to the Vessel.  (*Id.*).  Hyundai, in turn, is proceeding against the disponent owner of the Vessel, Nordic Bulk Carriers A/S ("Nordic Bulk"), for the amounts that Hyundai may be liable to the head owners.  (*Id.*).  Nordic Bulk, in turn, is arbitrating against Plaintiff under their charterparty for the amounts that Nordic Bulk may be liable to Hyundai.  (*Id.*).

In this lawsuit, Plaintiff seeks to recover from Kamca and Glencore the amounts that it may be required to pay Nordic Bulk if Plaintiff is determined to have breached its charterparty by providing the Vessel with off-specification fuel products.  (*Id.* ¶¶ 11, 67).

4

There are minimal pleaded facts as to Glencore's alleged role in this case.  The FAC pleads only, on information and belief, that Glencore sold the fuel products to Kamca that were in turn resold to Plaintiff.  (*Id.* ¶ 7).  Plaintiff does not claim that: (i) the fuel sold by Glencore failed to meet any requirements in the sale contract between Glencore and Kamca; (ii) Glencore had a contract with, or made any representations or warranties to, Plaintiff; or (iii) Glencore had any knowledge of the contract between Kamca and Plaintiff, the intended end-use of the fuel products, or the Vessel's fuel requirements.

The FAC also does not allege that any of the transactions or events at issue took place in Texas, or that this lawsuit or the parties have any relevant connection to Texas.  The FAC pleads that both Plaintiff and Kamca are foreign companies with their principal places of business in Switzerland.  (*Id.* ¶¶ 3-4).  The bunker confirmation contract between Plaintiff and Kamca, attached as Exhibit 1 to the FAC, shows that their contract was brokered in Westport, Connecticut.  (*Id.* Ex. 1 at pp. 2, 4).  The delivery of the bunker fuel to the Vessel occurred in Panama, and the alleged damage to the Vessel was suffered in Panama and "at sea en route from Panama to its intended discharge ports of Ningbo and Nansha in China."  (*Id.* ¶¶ 8, 12). Nordic Bulk's claims that are the basis for Plaintiff's alleged damages are pending in arbitration proceedings in London, England.  (*Id.* ¶ 11).

Glencore is a Swiss company, organized and existing under the laws of Switzerland, with its head office at Baar, Switzerland.  (McNamara Decl. ¶ 2).[1]  During the time period relevant to this case (and currently), Glencore's primary U.S. office was located in New York.

---

[1]     "McNamara Declaration" or "McNamara Decl." refers to the Declaration of Andrew McNamara in Support of Glencore Ltd.'s Motion to Dismiss, submitted herewith.

(*Id.* ¶ 4).  While Glencore has a small office located in Texas, that office had no responsibility with respect to the fuel products at issue in this case.  (*Id.* ¶ 5).

The FAC notes that "Glencore may be served with process through its registered agent" in Texas (FAC ¶ 5), which as explained below, is irrelevant to whether Glencore is subject to general personal jurisdiction here.  It also alleges that "Glencore is authorized to do business in this state" and "systematically does business within this district."  (*Id.*).  Those allegations are unsupported by any facts.  More importantly:  the FAC does not allege that Glencore directed *any* act related to this lawsuit to the State of Texas.  The FAC does not contain any other purported jurisdictional allegations as to Glencore.

The first cause of action is asserted against Kamca only, for breach of the fuel sale contract between Plaintiff and Kamca.  The remaining causes of action are asserted against both Kamca and Glencore, for:  breach of warranty and misrepresentation (second cause of action), negligence (third cause of action), product liability (fourth cause of action), indemnity and contribution (fifth cause of action), and equitable subrogation (sixth cause of action).  None of them states a viable claim against Glencore.

## **ARGUMENT**

I.    **All Claims Against Glencore Should
     Be Dismissed for Lack of Personal Jurisdiction**

The FAC against Glencore should be dismissed for lack of personal jurisdiction.  Glencore is not subject to general jurisdiction in Texas, and the asserted claims do not relate to any alleged act of Glencore that was purposefully directed towards Texas, as required for specific jurisdiction.  "The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper."  *Monkton*, 768 F.3d at 431.  That burden cannot be met here,

and the FAC must therefore be dismissed.  *See id.* at 432-34 (affirming grant of motion to

dismiss for lack of general or specific jurisdiction over the defendant); *Lonestar Livestock*,

2015 WL 3756501, at *2 ("A court must dismiss an action when it lacks personal jurisdiction

over the defendant.") (citing Fed. R. Civ. P. 12(b)(2)).

A.      **Glencore Is Not Subject to General Jurisdiction in Texas**

Glencore is not subject to general jurisdiction in Texas.  Pursuant to the Supreme

Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and as explained by the Fifth

Circuit, general jurisdiction exists only when the defendant is "at home in the forum state."

*Monkton*, 768 F.3d at 432 (citing *Daimler*, 571 U.S. at 139).  For a corporation, the "place of

incorporation and principal place of business are where it is at home . . . .  It is, therefore,

incredibly difficult to establish general jurisdiction in a forum other than the place of

incorporation or principal place of business." *Id.* (internal citations and marks omitted).

Glencore is a company organized and existing under the laws of Switzerland, with its

principal place of business in Baar, Switzerland.  (McNamara Decl. ¶¶ 2-3).  It is therefore not

"at home" in Texas under the *Daimler* test, and it is not subject to general jurisdiction here.

None of the allegations in the FAC supports a different result.  The McNamara

Declaration establishes that Glencore does *not* have "a principal office in this district."  The

FAC's factually incorrect assertion to the contrary, alleged on information and belief (FAC ¶

5), should therefore be disregarded.  *See Lonestar Livestock*, 2015 WL 3756501, at *4 (in

ruling on personal jurisdiction, "the court is not required to credit conclusory allegations, or

allegations controverted by opposing affidavits").

The FAC points to the fact that Glencore "may be served with process through its registered agent" in this district (FAC ¶ 5), but that is irrelevant to whether general jurisdiction exists. *See 800 Adept, Inc. v. Enter. Rent-A-Car, Co.*, 545 F. Supp. 2d 562, 569 n.1 (E.D. Tex. 2008) ("a party does not consent to personal jurisdiction merely by complying with a state's registration statutes or appointing an agent for service of process").

The FAC's remaining allegations, that Glencore is "authorized to do business in this state" and "systematically does business within this district" (FAC ¶ 5) are devoid of any factual support, and should also be disregarded. *Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 969 (S.D. Tex. 2018) (in ruling on personal jurisdiction, "courts should not countenance vague, overgeneralized, or otherwise conclusory allegations"), *aff'd*, 760 F. App'x 281 (5th Cir. 2019).

More importantly, even if supported by facts, such allegations would fail as a matter of law to establish general jurisdiction. *See id.* at 972 ("it is not enough that a corporate defendant 'engages in a substantial, continuous, and systematic course of business' in the forum state—this alone the *Daimler* Court expressly rejected") (citing *Daimler*, 571 U.S. at 138-39); *see also Wartsila N. Am., Inc. v. Int'l Ctr. for Dispute Resolution*, 387 F. Supp. 3d 715, 731 (S.D. Tex. 2018) (allegations that defendant was "licensed in Texas, maintains its regional headquarters in Houston, Texas . . . [and] conducts a significant portion of its overall business in Texas" do not establish general jurisdiction).

The FAC does not contain any other allegations to support general jurisdiction over Glencore.  In any event, it is undisputable that Glencore is "at home" in Switzerland, not Texas.  Accordingly, there is no general jurisdiction in this case.

**B.     There Is No Specific Jurisdiction Over Glencore in Texas**

There is also no specific personal jurisdiction over Glencore.  Specific jurisdiction requires that the non-resident defendant "purposefully direct[] its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (citations omitted); *see also Head*, 298 F. Supp. 3d at 970 (same).

In this case, there is no allegation that Glencore did *anything* in Texas that relates to the alleged injuries or causes of action in the FAC.  The claims purportedly arise from the delivery of fuel products in Panama (FAC ¶ 8), pursuant to a contract between two foreign companies, Plaintiff and Kamca, that was brokered in Connecticut (*id.* ¶¶ 3-4, Ex. 1 at pp. 2, 4).  The alleged damage to the Vessel occurred in Panama and at sea between Panama and China (*id.* ¶¶ 8, 12), and Nordic Bulk's claims against Plaintiff are being arbitrated in London (*id.* ¶ 11).  The FAC contains almost no factual allegations as to Glencore, but Glencore is a Swiss company that contracted with another Swiss company, Kamca, and its Texas office had no responsibilities for the fuel products at issue in this case (McNamara Decl. ¶¶ 2, 4-5).

Plaintiff therefore cannot establish that Glencore "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."  *Panda Brandywine*, 253 F.3d at 868.  There is no connection between Glencore's alleged role in this case and the State of Texas, and therefore no basis for specific jurisdiction in Texas.  *See Monkton*, 768 F.3d at 432-33 (no specific jurisdiction when "the contract underlying the business transaction at issue in the lawsuit was not signed in the state and did not call for performance in the state"); *Stewart v. Marathon Petroleum Co. LP*, 326 F. Supp.

3d 284, 291-92 (E.D. La. 2018) (granting motion to dismiss claims based on allegedly defective product that was manufactured in Minnesota, sold to a Florida company, and shipped to Florida, because "none of the . . . defendants' connections to [the forum] gave rise to the facts underlying this dispute").

This Court does not have general or specific personal jurisdiction over Glencore. Pursuant to Rule 12(b)(2), the FAC against Glencore should therefore be dismissed.

II.     **The Causes of Action Against Glencore**
        **Should Be Dismissed for Failure to State a Claim**

The FAC should also be dismissed as to Glencore pursuant to Rule 12(b)(6) because it fails to allege any viable claim against Glencore as a matter of law.

A.      **The Second Cause of Action (Breach of Warranty and**
        **Misrepresentation) Fails to State a Claim Against Glencore**

The second cause of action appears to assert a hybrid claim for "breach of warranties" and "misrepresentation."  It fails to state a claim under either theory, because Glencore did not provide any warranties or representations to Plaintiff.

The only warranties or representations that Plaintiff claims were breached are those contained in Plaintiff's contract with *Kamca*.  (*See* FAC ¶ 28 ("*Kamca* expressly represented and warranted that the quality of the bunkers would meet the standard and specifications for marine fuel set forth in ISO 8217-2010, and the contract required the fuel to meet industry quality standards for marine fuel") (emphasis added); *id.* ¶ 29 ("*Kamca* further represented and warranted that the bunkers were compliant with . . . Annex VI of MARPOL 73/78") (emphasis added)).  The FAC does not (and cannot) allege that Plaintiff had a contract with Glencore, or that Glencore provided any representation or warranty to Plaintiff.

1.    *The "Breach of Warranty" Claim Should Be Dismissed*

To the extent the second cause of action asserts a claim for breach of warranty against Glencore, it should be dismissed.  This claim seeks to recover the amounts that Plaintiff has paid in defending the London arbitration or may be required to pay Nordic Bulk for its own breach of the charterparty (FAC ¶ 35), which are economic damages.  *See*, *e.g.*, *Park v. Escalera Ranch Owners' Ass'n, Inc.*, 457 S.W.3d 571, 603 (Tex. App. 2015) (a claim to recover for plaintiff's own contractual liability to a third party is "for economic injury").

It is well-established that "warranty claims . . . for economic damages are not legally viable under maritime law [when the plaintiff] lacks contractual privity."  *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 896 F. Supp. 2d 582, 599 (S.D. Tex. 2012).[2]  There was no contract and no warranty between Glencore and Plaintiff.  Any purported breach of warranty claim against Glencore therefore fails as a matter of law and should be dismissed.

2.    *The "Misrepresentation" Claim Should Be Dismissed*

The purported "misrepresentation" claim against Glencore similarly fails because Glencore did not make any representation to Plaintiff.  In order to state a claim for negligent misrepresentation under maritime law, the plaintiff must allege, *inter alia*, that "the defendant . . .  supplied false information for the plaintiff's guidance in a business transaction."  *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 826 F.2d 424, 428 (5th Cir. 1987).  There is no such allegation here.  Nor could there be, given that Glencore is not alleged to have had any dealings with Plaintiff.  The purported "misrepresentation" claim against Glencore should

---

[2]    The FAC is asserted under admiralty jurisdiction (FAC ¶ 1), and therefore all claims are governed by maritime law.  *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law.").

therefore be dismissed.  *See id.* at 429 (reversing trial court and entering judgment in favor of defendant because there was "no evidence in the record that [defendant] supplied false information for [plaintiff's] guidance" in a fuel sale transaction).[3]

### B. The Third Cause of Action (Negligence) and Fourth Cause of Action (Product Liability) Are Barred by the Economic Loss Rule

As stated above, the damages sought by Plaintiff—defense costs and amounts that it may be required to pay Nordic Bulk under its charterparty—are economic damages.  *See* Arg., § II(A)(1), *supra*.  Accordingly, pursuant to the economic loss rule, the third cause of action (negligence) and fourth cause of action (product liability) are barred as a matter of law.

"[T]he law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit."  *Taira Lynn Marine Ltd. No. 5, LLC v. Jays Seafood, Inc. (In re Taira Lynn Marine Ltd. No. 5, LLC)*, 444 F.3d 371, 377 (5th Cir. 2006); *see also Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1023-24, 1029 (5th Cir. 1985) (en banc) (affirming the "bright line rule" that there can be no recovery in maritime tort "for economic loss absent physical injury to a proprietary interest") (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927)).  "To show a sufficient proprietary interest, the general rule is that a plaintiff must show he is an owner of the damaged property."  *State of Veracruz v. BP, P.L.C. (In re Deepwater Horizon)*, 784 F.3d 1019, 1025-26 (5th Cir. 2015) (citing *Robins Dry Dock*, 275 U.S. at 308-09).

---

[3]    The FAC also does not plead facts to establish any of the other elements for a negligent misrepresentation claim, including that: (i) Glencore owed a legal duty to provide correct information to Plaintiff (*see Fermar, S.P.A. v. Peninsular Ship Agencies, Inc.*, 1993 A.M.C. 1803, 1805 (E.D. La. 1992) (plaintiff failed to establish such a legal duty because "there was no business relationship" between the parties)); (ii) Plaintiff relied on any information supplied by Glencore (*see Coastal (Bermuda)*, 826 F.2d at 429 & n.7 (plaintiff failed to establish "justifiable reliance")); or (iii) Glencore "intended the information to influence" the fuel sale between Kamca and Plaintiff (*id.* at 429).  Any one of these reasons requires dismissal.

The economic loss rule applies equally to claims asserted under a product liability

theory.  *See E. River S.S. Corp.*, 476 U.S. at 876 ("whether stated in negligence or strict

liability, no products-liability claim lies in admiralty when the only injury claimed is economic

loss"); *see also Pemeno Shipping Co. v. Louis Dreyfus Corp.*, No. H-04-2996, 2006 WL

696555, at \*7 (S.D. Tex. Mar. 14, 2006) (entering summary judgment against maritime

negligence and product liability claims because plaintiff did not have a proprietary interest in

the damaged property).

Plaintiff was not the owner of the Vessel that was allegedly damaged by the fuel oil.  It

was the time charterer of the Vessel.  (FAC ¶ 3).  Pursuant to the Supreme Court's *Robins Dry*

*Dock* decision, a time charterer does *not* have the proprietary interest necessary to assert a

negligence or other tort claim based on physical injury to the vessel.  *See M/V Testbank*, 752

F.2d at 1023 (pursuant to *Robins Dry Dock*, "a time charterer's relationship to its negligently

injured vessel is too remote"); *see also Fed. Commerce & Nav. Co. v. M/V Marathonian*, 528

F.2d 907, 907 (2d Cir. 1975) (affirming judgment on the pleadings that dismissed claims

brought by time charterer pursuant to the *Robins Dry Dock* rule).

The third and fourth causes of action are therefore prohibited by the economic loss rule

and should be dismissed.

### C. The Fifth Cause of Action (Indemnity and Contribution) Should Be Dismissed Because Plaintiff's Potential Liability to Nordic Bulk Is Based in Contract, Not Tort

Plaintiff's claims for indemnity and contribution should be dismissed because those

theories apply only where the underlying claim against the plaintiff is based in tort.  They are

not applicable where, as here, the liability that the plaintiff may face to a third party is based in

contract.  *See Dishong v. Peabody Corp.*, 219 F.R.D. 382, 386 n.3 (E.D. Va. 2003) (third-party

plaintiff could not seek maritime contribution because underlying claims arose "under contract

law and thus there is no possibility of contribution liability, which is a tort-law concept");

*Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833-35 (5th Cir. 1992) (explaining that "[g]eneral

maritime law recognizes few theories of indemnity" which, without a contract to indemnify,

are available only under limited circumstances to a "non-negligent tortfeasor").[4]

The FAC seeks indemnity and contribution based on the claims of Nordic Bulk

asserted against Plaintiff "under the charterparty between Plaintiff and Nordic Bulk."  (FAC

¶ 55).  These are contract claims.  *See E.A.S.T., Inc. of Stamford, Conn. V. M/V Alaia*, 673 F.

Supp. 796, 799 (E.D. La. 1987) ("[a] charter party . . . is merely a form of contract . . .").  The

tort law concepts of indemnity and contribution are therefore not available, and the fifth cause

of action should be dismissed.

### D.     The Sixth Cause of Action (Equitable Subrogation) Should Be Dismissed Because Plaintiff Has Not Fully Discharged Any Debt of Glencore

Recognizing that it has no viable claim against Glencore, Plaintiff has now added a

putative claim for "equitable subrogation," by which it seeks to assert in its own name causes

of action that Nordic Bulk or the other Vessel owners may have against Glencore.  Plaintiff

has no standing to do so.

The essential requirement for equitable subrogation is that the plaintiff has paid and

discharged a debt owed by the defendant to a third party, in its entirety.  *TransMontaigne*

*Partners L.P. v. Theta Marine Co.*, No. B-10-CV-19, 2011 WL 13337542, at *6 (S.D. Tex.

Mar. 1, 2011) (under maritime law, "the debt must be paid in its entirety in order for [plaintiff]

---

[4]     The FAC does not allege that Glencore has a contractual obligation to indemnify Plaintiff.

to recover" under equitable subrogation) (citing *Am. Indem. Lloyds v. Travelers Prop. & Cas. Ins. Co.*, 335 F.3d 429, 435 (5th Cir. 2003)); *accord Pape Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 403 (Tex. App. 1987) (explaining that "[s]ubrogation is applicable where the potential subrogee has paid in full the debt or claim of the creditor" and rejecting subrogation theory because "there is no evidence that I.C.S. has paid Dow any sum which would entitle it to be subrogated to Dow's cause of action against appellants") (citing *Providence v. Sims*, 441 S.W.2d 516, 419 (Tex. 1969)); *Elbar Invs., Inc. v. Okedokun*, 593 B.R. 469, 548 (Bankr. S.D. Tex. 2018) ("The Fifth Circuit, citing the Texas Supreme Court, has stated that '[a]s a general rule, a person is not entitled to subrogate to the rights of a creditor until the creditor's claim against the debtor has been satisfied or paid in full.'") (citations omitted).

Plaintiff concedes that it has not made *any* payment to anyone.  (FAC ¶ 63).  Nordic Bulk is the only Vessel owner that has asserted a claim against Plaintiff, and that claim is currently being arbitrated in London.  (*Id.* ¶ 11).  Accordingly, Plaintiff has not satisfied any debt to a third party "in its entirety," let alone a debt owed by Glencore.  Equitable subrogation is therefore not available as a matter of law.  *See TransMontaigne*, 2011 WL 13337542, at *6 (granting motion to dismiss equitable subrogation claim for failure to plead full payment of the underlying debt).

Moreover, there is no scenario under which Plaintiff will ever make a payment to Nordic Bulk that would discharge a debt of Glencore.  Nordic Bulk's claims against Plaintiff arise under the charterparty between them, and any payment made to resolve those claims would only discharge Plaintiff's contractual obligation to Nordic Bulk.  (FAC ¶ 11).  The payment would not satisfy any claim that Nordic Bulk may have against Glencore.  For this

15

additional reason, there is no basis for equitable subrogation.  *See Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1006 (11th Cir. 2004) ("[s]ubrogation . . . is not available to a party who pays his own debt"); *Hamada v. Far E. Nat'l Bank (In re Hamada)*, 291 F.3d 645, 651 (9th Cir. 2002) (subrogation "is a derivative right, acquired by satisfaction of the loss or claim that a third party has against another"); *Great Am. Assurance Co. v. Wills*, No. SA-10-CV-353-XR, 2012 WL 13029762, at *7 (W.D. Tex. July 24, 2012) (granting motion to dismiss and explaining: "[n]o claim for equitable subrogation can be allowed because [plaintiff] is seeking reimbursement for money it paid to satisfy a debt for which it is primarily liable" pursuant to its own contract with the third party).

The sixth cause of action should therefore be dismissed.

## CONCLUSION

The FAC against Glencore should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction, or pursuant to Rule 12(b)(6) for failure to state any viable claim.

Dated:   Houston, Texas                            Respectfully submitted,
             September 25, 2019

                                                          */s/ Ivan M. Rodriguez*
                                                          Ivan M. Rodriguez
                                                          Texas Bar No. 24058977
                                                          Federal ID No. 4566982
                                                          500 Dallas Street, Suite 1300
                                                          Houston, Texas 77002
                                                          Telephone: 713-626-1386
                                                          Telecopier: 713-626-1388
                                                          Email: ivan.rodriguez@phelps.com

                                                          **ATTORNEY-IN-CHARGE**
                                                          **FOR DEFENDANT**
                                                          **GLENCORE, LTD.**

16

**OF COUNSEL:**

**PHELPS DUNBAR LLP**
Andrew R. Nash
Texas Bar No. 24083550
Federal ID No. 1690806
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: 713-626-1386
Telecopier: 713-626-1388
Email: andy.nash@phelps.com

**HERBERT SMITH FREEHILLS**
**NEW YORK LLP**
Peter J. Behmke (*pro hac vice pending*)
New York Bar No. 4301685
Michael P. Jones (*pro hac vice pending*)
New York Bar No. 5106208
450 Lexington Avenue, 14th Floor
New York, NY  10017
Telephone:  917-542-7600
Email:  peter.behmke@hsf.com
            michael.jones@hsf.com