## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ADMINTERMARE, A DIVISION OF ADM INTERNATIONAL, SARL, | § § § | |
| Plaintiff, | § § | C. A. No.:  4:19-cv-02238 |
| V. | § § | Admiralty 9(h) |
| KAMCA TRADING SA and GLENCORE LTD., | § § § | |
| Defendants. | § § | |

### KAMCA TRADING SA'S RESPONSE TO
### ADMINTERMARE'S MOTION TO TRANSFER VENUE

Kamca Trading SA ("Kamca") respectfully submits this response to plaintiff ADMIntermare's ("ADM") motion to transfer venue of this action to the United States District Court for the Southern District of New York (the "SDNY") (ECF No. 25).  For the reasons set forth herein, as well as those set forth in Kamca's Motion to Dismiss (ECF Nos. 23 & 24), the Court should deny ADM's transfer motion and dismiss all claims asserted against Kamca that are contained in ADM's First Amended Complaint (the "FAC") (ECF No. 10).

### I.

### NATURE AND STAGE OF THE PROCEEDINGS

1. The action is at the pleading stage.  Defendants Glencore Ltd. and Kamca have moved to dismiss this action for, *inter alia*, lack of personal jurisdiction (ECF Nos. 14, 23 & 24). With respect to Kamca's motion, ADM has not disputed that this Court lacks jurisdiction over Kamca—rather, ADM argued Kamca's motion was moot because ADM had filed a motion to transfer venue of this action to the SDNY.  (ECF No. 30).

2.      By Order of this Court, on an agreed motion, Kamca has until December 4, 2019, to file a response to ADM's Motion to Transfer Venue and a reply in connection with its Motion to Dismiss.  (ECF No. 33).  To date, none of the motions filed by any of the parties has been decided.

## II.

### STANDARD OF REVIEW, STATEMENT OF ISSUES, AND SUMMARY OF ARGUMENT

3.      Whether to grant or deny a motion to transfer venue lies in the discretion of the district judge "in the interest of justice."  The standard of review for such a decision is therefore abuse of discretion.  *Casarez v. Burlington N./Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir. 1999).

4.      Kamca respectfully submits that ADM made a fatal but averted and deliberate choice  in filing its claims in this Court for two fundamental and determinative reasons:  (1) ADM has failed to identify any facts supporting personal jurisdiction over Kamca in this Court and (2) ADM knowingly and deliberately violated the SDNY forum-selection provision contained in the bunker sales contract upon which its claims against Kamca are based by filing these claims in this Court (see, e.g., ECF No. 25, p. 2).

5.      In these circumstances, several Circuit Courts of Appeal have held that the "interest of justice" will <u>not</u> be met by transferring an action to another district and have consistently affirmed dismissal of the lawsuit, even where dismissal would potentially time bar the plaintiff's claim.  *Dubin v. U.S.*, 380 F.2d 813, n. 5 (5th Cir. 1967) ("It is obviously not 'in the interest of justice' to allow this section [§ 1406(a)] to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district.  The purpose of the statute of limitations is not, therefore, frustrated by this statute."); *see also Stanifer v. Brannan*, 564 F.3d 455 (6th Cir. 2009); *Continental Insurance Co. v. M/V ORSULA*, 354 F.3d 603 (7th Cir. 2003); *Keaveney v. Larimer*,

242 F.3d 389 (10th Cir. 2000); *Nichols, et al. v. G.D. Searle & Co., et al.*, 991 F.2d 1195 (4th Cir. 1993); *Spar, Inc. v. Information Services, Inc.*, 956 F.2d 392 (2d Cir. 1992); *Deleski v. Raymark Industries, Inc.*, 819 F.2d 377 (3rd Cir. 1987).

6.      As discussed below, it is clear that ADM knew that the action was improperly filed in the SDTX because there are no facts upon which the Court could exercise personal jurisdiction over Kamca.  It is also equally clear that ADM knew of but chose to ignore the SDNY forum-selection clause in the governing contract between it and Kamca.  Based on the consistent holdings in the Circuit Courts of Appeal decisions cited above, the consequence in these circumstances of ADM filing its claims in the SDTX, *i.e.*, the wrong District Court, should be, in the interest of justice, dismissal of the action, rather than transfer.

## III.

## FACTS RELEVANT TO ADM'S TRANSFER MOTION

7.      The following facts are relevant to the personal jurisdiction aspects of ADM's transfer motion:

- ADM's Complaint and First Amended Complaint allege no facts supporting personal jurisdiction over Kamca in this Court.  (ECF Nos. 1 & 10).

- ADM does not allege any facts in its response to Kamca's Motion to Dismiss supporting personal jurisdiction over Kamca in this Court.  (ECF No. 30).

- Instead of contesting Kamca's Motion to Dismiss on the issue of personal jurisdiction, ADM argues that the Motion is moot because the Court should transfer venue of this action to the SDNY as per the terms and conditions of the bunker sales contract between it and Kamca.  (ECF No. 30, pp. 1-2).

- ADM does not allege any facts in its Motion to Transfer Venue supporting personal jurisdiction over Kamca in this Court.  (ECF No. 25).

8.      Thus, on this record, there are no facts upon which the Court could exercise personal jurisdiction over Kamca.[1]

9.      The following facts are relevant to the SDNY forum-selection clause aspects of ADM's transfer motion inasmuch as ADM relies on the SDNY forum-selection clause in Kamca's general terms and conditions to support transfer of this action to the SDNY.

- The June 20, 2018, bunker confirmation (evidencing the bunker sales contract on which ADM relies) was filed by ADM along with the Complaint and the First Amended Complaint (ECF Nos. 1-1, 10-1).  It provides in part: "Sale subject to seller's [Kamca's] terms and conditions, copies of which are available on request."  (ECF Nos. 1-1, 10-1).

- Kamca had sold bunkers to ADM on eleven separate occasions during the period from January 2017 to June 2018, all of which were specifically subject to Kamca's general terms and conditions:  "Delivery Conditions:  As per Kamca general terms and conditions, unless otherwise agreed with Buyer [ADM] in writing, on a *first come first served basis*.  (Emphasis in original) (Arbeláez Montoya Declaration, dated December 4, 2019, ¶ 2, Ex. 1).

- By letter dated August 15, 2018, approximately ten months <u>before</u> this action was filed, Kamca had forwarded a copy of its General Terms and Conditions of Sale to ADM's attorneys specifically in response to their formal communication of "Notice of Claims" on behalf of ADM dated August 13, 2018.  (Arbeláez Montoya Declaration, dated December 4, 2019, ¶ 3, Ex. 2).

- Kamca's general terms and conditions provide in part with respect to claims for quality of product sold:  "Such litigation may only be brought, exclusively, in the United States District Court for the Southern District of New York."  (Arbeláez Montoya Declaration, dated December 4, 2019, ¶ 3, Ex. 2, Clause 10-12 of Kamca's General Terms and Conditions).

- Significantly, ADM admitted that it knew of the contents of Kamca's general terms and conditions, and specifically of the provisions of Clause 10 providing for "Claims," <u>before</u> it filed this action.

---

[1] ADM argues that "[w]ithout a venue transfer, judicial resources will be consumed here for discovery on whether Glencore and Kamca are subject to personal jurisdiction here…"  (ECF 25, p. 4).  What ADM fails to acknowledge, however, is that it is not entitled to any discovery on the issue of personal jurisdiction because it has utterly failed to make a "preliminary showing of jurisdiction" by virtue of not alleging any facts supporting jurisdiction.  A preliminary showing of jurisdiction over Kamca is the threshold required for such discovery.  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).

> Plaintiff filed this case on June 21, 2019.  Doc. 1.  One reason for commencing this case at that time was to preserve Plaintiff's claims against Kamca Trading SA, one of the defendants, because <u>Kamca's bunker sale contract general terms and conditions</u> call for any litigation to be brought within one year of the bunker delivery.  Kamca delivered the bunkers in Panama on June 22, 2018, so Plaintiff timely commenced this action on June 21, 2019 to avoid any potential issue with Kamca alleging that the claim could be time-barred.

(ECF No. 25, p. 1 (emphasis added)).

10.     What is crystal clear from these facts is that prior to filing this action, (1) ADM knew that it had no facts supporting this Court's exercise of personal jurisdiction over Kamca and (2) ADM knew that the bunkers sales contract between it and Kamca contained Kamca's general terms and conditions which provide for the very SDNY forum-selection clause upon which ADM now seeks to base its Motion to Transfer Venue.

11.     The consequence of such knowledge by ADM prior to the filing of this action should, in the interests of justice, be dismissal of the action and not a transfer, as several Circuit Courts of Appeals have held.

**IV.**

**ARGUMENT**

12.     ADM's Motion to Transfer Venue should be denied as to Kamca because a transfer would not be "in the interest of justice" as required under 28 U.S.C. §§ 1404(a), 1406(a), and 1631.[2]  Instead, dismissal of this action is warranted since ADM filed this action in the wrong district court knowing that there are no facts supporting personal jurisdiction over Kamca

---

[2] ADM relies on three statutes in support of its transfer motion.  Kamca respectfully suggests, however, that § 1406(a) is the proper mechanism to weigh ADM's transfer request.  "Although the courts are rather evenly divided on the subject, the better view is that Section 1631 is limited to subject matter jurisdiction defects and does not address problems with personal jurisdiction or venue."  *Wright, Miller & Cooper*, 15 Fed. Prac. & Proc. Juris. § 3842 (4th ed. April 2019 Update).  Section 1404(a) is not applicable in these circumstances because it "presupposes that the district court in which suit was filed is a proper venue."  *Wright, Miller & Cooper*, 15 Fed. Prac. & Proc. Juris. § 3842 (4th ed. April 2019 Update).  ADM has not shown that this Court is a proper venue for this action.  In fact, by seeking a transfer, ADM admits that this Court is not a proper venue.  In any event, under all three statutes, the controlling standard for determining whether transfer is warranted is whether the plaintiff has carried its burden to show that a transfer is "in the interest of justice."

and knowing that the bunker sales contract between ADM and Kamca contained a forum-selection clause requiring this action to be filed in the SDNY.  Its actions cannot be explained on the basis of some misapprehension or mistake (which it has in any case not sought to contend) but only on the basis that it has sought to obtain some manner of due advantage by circumventing the known applicable provisions and procedures for its claim.  Having now acknowledged its failure in that attempt, it now seeks to extricate itself from the consequences by alleging that those consequences should not be seen to be in the interest of justice.  They are very much in the interest of justice for Kamca, which has unnecessarily been put too much time, trouble, and expense in resisting ADM's machinations.  Kamca's representatives have repeatedly protested the action taken by ADM to commence and maintain its lawsuit before this Court.

## V.

### ADM HAS FAILED TO CARRY ITS BURDEN TO SHOW THAT TRANSFER OF THIS ACTION TO THE SDNY WOULD BE "IN THE INTEREST OF JUSTICE"

13.    The burden is on ADM to establish that a transfer of venue would be in the interest of justice.  *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 629 F. Supp. 2d 759, 762 (S.D. Tex. 2009).  ADM has failed to carry this burden.

14.    Indeed, the only reason proffered by ADM in support of its burden as to Kamca is "it is in the interest of justice to transfer the case under § 1631 so that the timeliness of this action against Kamca is preserved in the transferee court."  (ECF No. 25, p. 4).  This alleged justification is repeated with respect to §§ 1404(a) and 1406(a).  (*Id.* at 8 and 10).

15.    What ADM fails to do, however, is to provide any justification for filing its claims against Kamca in this Court in the first place.  The reason why it has not done so is, of course, because it had and has no justification for filing its claims against Kamca in this Court.

As noted above, prior to the filing of this action on June 19, 2019, ADM knew that (1) it had no facts supporting this Court's exercise of personal jurisdiction over Kamca and (2) the bunkers sales contract between it and Kamca contained Kamca's general terms and conditions which provided that any claims between the parties were required to be litigated in the SDNY.[3]

16.     Realizing that the game is up in filing its claims against Kamca in this Court, ADM now seeks to soft-pedal around its failed stratagem and argues that a transfer of this action to the SDNY would allegedly cure all of the personal jurisdictional and venue issues which the filing of this action has wrought; to wit, the motions to dismiss filed by Kamca and Glencore, based on, *inter alia*, a lack of personal jurisdiction over Kamca and Glencore.

17.     Kamca respectfully requests that the Court hold ADM to the consequences of filing this action in the wrong District Court and (a) deny ADM's motion to transfer and (b) dismiss the action against Kamca.  Both Supreme Court and Circuit Court of Appeals case law urges this result.

18.     While ADM relies heavily on *Atlantic Marine Construction Co., Inc. v. U.S.D.C. for the Western District of Texas*, 571 U.S. 49, 63 (2013) (ECF No. 25, pp. 7-8) and *Goldlawr v. Heiman*, 369 U.S. 463 (1962) (ECF No. 25, pp. 9-10) in support of its motion to transfer, those cases (and the subsequent cases interpreting them) counsel heavily in favor of dismissal.

19.     *Goldlawr* allowed a transferred claim to proceed against two (of many) defendants, despite those defendants' argument that the transferring court lacked jurisdiction over them.  *Id.* at 466.  The Court's concern was that "injustice" would arise "merely because they [plaintiffs] had made an erroneous guess with regard to the existence of some elusive fact of

---

[3] ADM "does not concede that Kamca's General Terms and Conditions apply or are enforceable."  (ECF No. 25, p. 1).  ADM has waived this argument by relying on the SDNY forum-selection clause in the general terms and conditions in seeking transfer of this action to the SDNY.  If the SDNY forum-selection clause is not applicable or enforceable, however, ADM's motion to transfer venue should be denied outright because ADM has not identified any district court in the United States to which this action could be transferred (nor could it since there is none).

the kind upon which venue provisions often turn." *Id.* Here, there was no "guess" as to some "elusive fact." ADM did not mistakenly plead incorrect jurisdictional allegations against Kamca—it offered no such pleadings. Moreover, ADM fails to offer any reason why it simply ignored the forum-selection clause in its contract with Kamca despite having received it long before it commenced this action. (ECF No. 25-1, p. 1).

20. Similarly, *Atlantic Marine* counsels against finding any "injustice" that would support transfer over dismissal:

> We have noted in contexts unrelated to forum-selection clauses that a defendant "invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." That is because of the "hars[h] result" of that doctrine: Unlike a § 1404(a) motion, a successful motion under *forum non conveniens* requires a dismissal of the case. That inconveniences plaintiffs in several respects and even "makes it possible for [plaintiffs] to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate." Such caution is not warranted, however, when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause. In such a case, dismissal would work no injustice on the plaintiff.

*Id.* at footnote 8. (Citations omitted) (Emphasis added).

21. Furthermore, numerous decisions by the Circuit Courts of Appeals have justified dismissal in these circumstances, often relying on *Goldlawr*. The logical starting point for a review of these appellate decisions is the Fifth Circuit's own decision in *Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967). While *Dubin* affirmed a transfer of that lawsuit pursuant to § 1406(a) under the specific facts present there, footnote 5 of the decision has often been cited in support of dismissal of an action rather than a transfer where a plaintiff knowingly files an action in the wrong district.

> Section 1406, as originally enacted…was mandatory and required transfer without any consideration of the reason why a case was filed in the wrong district. By act of May 24, 1949…the section was amended to provide transfer in lieu of dismissal only "if it be in the interest of justice…" In interpreting this section, Goldlawr, infra, emphasizes the

diligence of a plaintiff in filing suit to overcome the statute of limitations.  It is obviously not "in the interest of justice" to allow this section to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district.  The purpose of the statute of limitations is not, therefore, frustrated by this statute.

*Id*. at footnote 5.

22.     The Fifth Circuit's recital of the consequences that will befall a plaintiff who has filed in the wrong district has frequently been cited and followed by the other Circuit Courts of Appeals.  For example, in *Stanifer v. Brannan*, 564 F.3d 455 (6th Cir. 2009), the lawsuit was filed in Kentucky and before filing an answer, the defendant filed a motion to dismiss based on lack of personal jurisdiction.  In response to that motion, the plaintiff did not attempt to establish valid grounds for personal jurisdiction, but instead, filed a motion to transfer the action to Alabama.  The district court denied the motion to transfer under §§ 1406(a) and 1631 and dismissed the lawsuit on personal jurisdiction grounds even though the plaintiff would likely be time barred if a new lawsuit were later filed in Alabama.  On appeal, the Sixth Circuit affirmed the district court's dismissal of the action instead of a transfer.

In this case, we have little hesitation in affirming the district court's order dismissing the plaintiff's complaint for lack of personal jurisdiction over the defendants rather than transferring the case to the district that the plaintiff's attorney undoubtedly knew was the correct one all along.  Specifically, we agree with the court's determination that the interests of justice swing against the plaintiff and not in his favor.  Although the district court was aware of the possible expiration of the Alabama statute of limitations and took that factor into consideration, the court was within its discretion to hold that the plaintiff, having engaged in the misuse of the court's processes, should not be permitted by means of a transfer to "resurrect a claim which might be lost due to a complete lack of diligence in determining the proper forum in the first place."  Moreover, it is clear that substantial costs to the judicial system, let alone the defendants, have resulted from this litigation, including the expenditure of resources in the district court and on appeal.

*Id*. at 460.

23.     Likewise, in *Continental Insurance Co. v. M/V ORSULA*, 354 F.3d 603 (7th Cir. 2003), cargo was damaged aboard a vessel transported under the Carriage of Goods by Sea Act

("COGSA") giving rise to a maritime cargo claim.  A timely lawsuit was filed in the Northern District of Illinois, although the bill of lading contract contained a forum-selection clause requiring suit to be filed in the U.S. district court where the cargo was discharged; in this case in the District of Indiana.  The defendant filed a motion to dismiss based on the plaintiff filing in an improper venue and the plaintiff then sought to transfer the action to the District of Indiana under § 1406(a).  The district court dismissed the lawsuit and denied plaintiff's motion to transfer venue.  On appeal, the Seventh Circuit affirmed dismissal of the lawsuit, even though a new lawsuit in Indiana would be time barred.

> The district court was justified in dismissing, rather than transferring, the suits.  The district court reasoned that "in a case in which all parties are commercially sophisticated and familiar with the forms of litigation in which they engage," a transfer in the interests of justice is not justified when "[t]here was nothing obscure" about the proper forum…Dismissal was proper; filing in the Northern District of Illinois was an obvious mistake made by a sophisticated party with representation.  We will not second-guess the district court when it has not clearly abused its discretion.

> Furthermore, the dismissal of a cause of action for improper venue under [§ 1406(a)] after the statute of limitations has run does not, on its own, constitute an abuse of discretion…Congress enacted § 1406(a) to avoid "the injustice which had often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn."  [Citing to *Goldlawr*].  The district court did not abuse its discretion in finding that the fact upon which venue under the forum-selection clause turned—the location of Burns Harbor—was not elusive.

*Id*. at 607.

24.    Similarly, the Second Circuit in *Spar, Inc. v. Information Resources, Inc.*, 956 F.2d 392 (2d Cir. 1992) affirmed the denial of a motion to transfer where the action was wrongly filed in a district where the claim was time barred.

> Upon reviewing the facts, we conclude that allowing a transfer in this case would reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice.  See, e.g., *Dubin*, 380 F.2d at 816 n. 5 ("It is obviously not 'in the interest of justice' to allow [§ 1406] to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district").

*Id*. at 394.

25.     See also, *Keaveney v. Larimer*, 242 F.3d 389, 2000 WL 1853994 (10th Cir. 2000) (unpublished table decision) (affirming denial of transfer of *pro se* plaintiff's filing of his claim in wrong district even if a new claim by plaintiff would be time barred); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1202 (4th Cir. 1993) ("[W]e hold that a district court does not abuse its discretion when it denies, as not in the interest of justice, a plaintiff's motion under section 1406(a) or section 1404(a) to transfer a case from an improper forum because the plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper."); *Deleski v. Raymark Industries, Inc.*, 819 F.2d 377 (3rd Cir. 1987) (affirming denial of transfer because plaintiff initially filed claim in district where it was time barred).

26.     Here, there is no "elusive" venue or personal jurisdictional facts involving Kamca.  Kamca's Motion to Dismiss makes clear that ADM knew, at the time this action was commenced, that the bunker sales contract upon which ADM's claims are based had nothing to do with Texas, and that Kamca was a Swiss corporation with its head office and place of business in Switzerland.  (ECF Nos. 23 & 24).  Moreover, ADM has not alleged any facts in any of its pleadings or motion papers which indicate that Kamca is subject to personal jurisdiction in this Court.

27.     Furthermore, at the time this action was commenced, ADM knew that the bunker sales contract was subject to Kamca's general terms and conditions, which contained a forum-selection clause calling for disputes to the litigated in the SDNY.

28.     Kamca's representatives promptly protested ADM's actions in filing its Complaint in this Court upon learning of that action by letter to ADM's attorneys dated July 8, 2019, expressly referring to the contractual forum-selection clause in its terms of sale.  (Arbeláez

Montoya Declaration, dated December 4, 2019, ¶ 4, Ex. 3).  ADM attorneys' response was not forthcoming until August 7, 2019, and expressed only the weak response that: "In our view, it will be beneficial for all concerned to proceed with the lawsuit in Houston so that Kamca and Glencore enter their appearances." (Arbeláez Montoya Declaration, dated December 4, 2019, ¶ 5, Ex. 4).  Kamca contested that it was "in any manner 'beneficial' to be confronted with proceedings in a non-contractual and non-approved forum" by its letter to ADM's attorneys dated September 28, 2019.  (Arbeláez Montoya Declaration, dated December 4, 2019, ¶ 6, Ex. 5).

29.    The only take away from these facts is that ADM knew that filing its claim against Kamca in this Court was improper.  As several Circuit Courts of Appeals have held, deliberate actions and even obvious errors in filing in the wrong district are properly subject to dismissal rather than transfer.  "It is obviously not 'in the interest of justice' to allow this section [§ 1406(a)] to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district.  The purpose of the statute of limitations is not, therefore, frustrated by this statute." *Dubin* at n. 5.  "The negative implication of [*Goldlawr's*] statement is that where a plaintiff's attorney files in the wrong jurisdiction not 'because they … made an erroneous guess with regard to an elusive fact," but because he/she made an obvious error, transfer under section 1406 is inappropriate." *Nichols* at 1201-02 (citation omitted).  "In speaking of a mistake resulting from 'the uncertainties of proper venue,' the *Goldlawr* court cannot have intended that dismissal of a complaint filed, deliberately or carelessly, in the wrong district should be excused as a "justice-defeating technicality." *Stanifer* at 458 (citation omitted).  "The district court did not abuse its discretion in finding that the fact upon which venue under the forum-selection clause turned—

the location [of the discharge port]—was not elusive" (referring to the *Goldlawr* decision). *ORSULA* at 608.

30.    In conclusion, ADM has failed to carry its burden that the action should be transferred to the SDNY in the interest of justice, with the consequence that the action should be dismissed as to Kamca.

**VI.**

**CONCLUSION**

Kamca respectfully requests that the Court deny ADM's Motion to Transfer Venue (ECF No. 25) in its entirety (or as to Kamca), and for such other and further relief as the Court sees fit.

Respectfully submitted,

 */s/ Kevin P. Walters*
Kevin P. Walters
Texas State Bar No. 20818000
Federal I.D. No. 5649
ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
1600 Smith Street, Suite 5000
Houston, Texas 77002-7380
Telephone: (713) 224-8380
Facsimile:  (713) 225-9545
kevin.walters@roystonlaw.com

**ATTORNEYS FOR DEFENDANT
KAMCA TRADING SA**

OF COUNSEL:

Kirk M. Lyons (*Pro Hac Vice*)
NY 1995612
LYONS & FLOOD, LLP
One Exchange Plaza
55 Broadway, Suite 1501
New York, NY 10006
Telephone: (212) 594-2400
klyons@lyons-flood.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2019, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court, pursuant to Rule 5 of the Federal Rules of Civil Procedure, and/or via the CM/ECF Filing System, which will automatically serve a notice of electronic filing, and/or by facsimile and/or by depositing the same in the United States Mail, postage prepaid and properly addressed to the following:

Gerard J. Kimmitt, II                                   Michael P. Jones
Christopher R. Hart                                    Peter J. Behmke
HFW                                                           Herbert Smith Freehills New York LLP
5151 San Felipe, Suite 400                          450 Lexington Ave., 14th Floor
Houston, Texas 77056                                 New York, NY 10017
jerry.kimmitt@hfw.com                               michael.jones@hsf.com
chris.hart@hfw.com                                     peter.behmke@hsf.com

Ivan M. Rodriguez
Phelps Dunbar LLP
500 Dallas Street, Suite 1300
Houston, Texas 77002
ivan.rodriguez@phelps.com

*/s/ Kevin P. Walters*
Kevin P. Walters